1  Gayle M. Blatt, SBN 122048
   *gmb@cglaw.com*
2  P. Camille Guerra, SBN 326546
   *camille@cglaw.com*
3  **CASEY GERRY SCHENK**
4  **FRANCAVILLA BLATT & PENFIELD, LLP**
   110 Laurel Street
5  San Diego, CA 92101
   Telephone: (619) 238-1811
6  Facsimile: (619) 544-9232

7

8  *Attorneys for Plaintiff*
   *and the proposed class*
9

10                **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12

13  CINDY PEREIRA, on behalf of         Case No.: 5:21-cv-1767
    herself and a class of others similarly
14  situated,
                                        **CLASS ACTION COMPLAINT**
15
            Plaintiff,
                                        **DEMAND FOR JURY TRIAL**
16
17          v.

18  CAMPBELL SOUP COMPANY,
    AND PLUM, PBC,
19
20          Defendants.

21

22

23

24

25

26

27

28

Plaintiff Cindy Pereira, on behalf of herself and all others similarly situated, by her undersigned attorneys, against Defendants, Campbell Soup Company (hereafter "Campbell") and Plum, PBC (hereafter "Plum"), alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, allege, upon information and belief and investigation of her counsel, as follows:

## **INTRODUCTION**

1.     This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Nationwide Class and California Subclass (collectively, the "Class"), all of whom purchased one or more baby foods manufactured by Defendants.[1]

2.     Campbell purchased Plum in 2013 for $249 million. At the time, Campbell touted Plum as the "No. 2 brand of organic baby food in the United States."[2] Plum represents its food philosophy as "Little ones deserve the very best

---

[1] The purchased products include, but are not limited to: Plum Organics Stage 1 Just Peaches, Plum Organics Stage 1 Just Prunes, Plum Organics Stage 1 Just Sweet Potato, Plum Organics Stage 1 Just Mango, Plum Organics Super Puffs Variety Pack, Plum Organics Stage 2 Pear Purple Carrot & Blueberry, Plum Organics Stage 2 Pear Spinach and Pea, Plum Organics Stage 2 Banana Pumpkin, Plum Organics Stage 2 Grow Well DHA, Plum Organics Stage 2 Sweet Potato Apple & Corn, Plum Organics Stage 2 Banana Zucchini & Amaranth, Plum Organics Stage 2 Mango Sweet Potato Apple & Millet, Plum Organics Stage 2 Pumpkin Chickpea Spinach & Broccoli, Plum Organics Stage 2 Butternut Squash Carrot Chickpea & Corn, Plum Organics Stage 2 Apple Plum Berry Barley, Plum Organics Stage 2 Pear & Mango, Plum Organics Stage 2 Peach Pumpkin Carrot & Cinnamon, Plum Organics Stage 2 Mango Yellow Zucchini Corn & Turmeric, Plum Organics Mighty 4 Guava Banana Black Bean Carrot Oat, Plum Organics Mighty 4 Pear Cherry Blackberry Strawberry Black Bean Spinach Oat, Plum Organics Mighty Veggie Zucchini Apple Watermelon Barley, Plum Organics Mighty Veggie Spinach Grape Apple Amaranth, Plum Organics Mighty Veggie Carrot Pear Pomegranate Oat, Plum Organics Mighty Morning Banana Blueberry Oat Quinoa, Plum Organics Mighty Protein & Fiber Pear White Bean Blueberry Date & Chia, Plum Organics Mighty Protein & Fiber Mango Banana White Bean Sunflower Seed Butter & Chia, and Plum Organics Mighty Protein & Fiber Banana White Beat Strawberry Chia (the "Products").

[2] *See* https://www.campbellsoupcompany.com/newsroom/press-releases/campbell-completes-acquisition-of-plum-organics/ (last accessed February 10, 2021).

CLASS ACTION COMPLAINT

food from the very first bite."[3] Plum prides itself for being on "Team Parent," noting on its website and advertisements, "Parenting is hard. That's why Plum is easy."[4]

3.      Defendants do not list heavy metals as an ingredient on the Products' label nor do they warn of the potential presence of heavy metals in their Products.

4.      Unbeknownst to Plaintiff and members of the proposed Class, and contrary to the representations on the Products' label, the Products contain toxic heavy metals, which, if disclosed to Plaintiff and members of the proposed Class prior to purchase, would have caused Plaintiff and members of the proposed Class not to purchase or consume the Products.

5.      As a result, the Products' labeling is deceptive and misleading.

6.      Plaintiff and the members of the proposed Class, as defined below, thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

## THE PARTIES

7.      Plaintiff Cindy Pereira is a citizen of the State of California and is a member of the proposed Class defined herein. She purchased many of the listed Products from Target throughout January 2021, including Plum Organics Apple & Carrot Baby Food Pouch, Plum Organics Pear Spinach & Pea Baby Food Pouch, Plum Organics Pear & Mango Baby Food Pouch, Plum Organics Stage 2 Peach Banana & Apricot Baby Food Pouch and Plum Organics Pear Purple Carrot & Blueberry Baby Food Pouches.

8.      Defendant, Campbell Soup Company, is a New Jersey corporation with its headquarters located in Camden, New Jersey.

9.      Defendant, Plum, PBC, is a Delaware corporation with its headquarters located in Emeryville, California.

---

[3] *See* https://www.plumorganics.com/food-philosophy/ (last accessed February 10, 2021).

[4] *See* https://www.plumorganics.com/video-category/parenting-is-hard/#videos (last accessed February 10, 2021).

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the members of the proposed Class exceed $5,000,000 and because Defendants are citizens of a different state than most members of the proposed Class.

11.     This Court has personal jurisdiction over Defendants because Defendants regularly sell and market products and conduct business in this District and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

12.     Venue is proper in this Court because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendants. Furthermore, Defendant, Plum, is headquartered in this District.

**FACTUAL ALLEGATIONS**

13.     Defendants manufacture, distribute, promote, offer for sale, and sell the Products, both in the past and currently. Defendants have advertised and continue to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

14.     An investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer Policy (hereafter the "Subcommittee") revealed that baby foods manufactured by Defendants are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[5]

15.     Exposure to heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological

---

[5] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).

CLASS ACTION COMPLAINT

development and long-term brain function. Lead and arsenic are heavy metals known to cause a wide spectrum of adverse outcomes in pregnancy such as abortions, retarded growth at the intrauterine cavity, skeletal deformities, malformations and retarded development especially of the nervous system.[6]

16.    Defendants refused invitations to cooperate with the Subcommittee, leading the Subcommittee to state it is "greatly concerned that [Defendants'] lack of cooperation might be obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products." Defendants additionally refused to produce to the Subcommittee their testing standards or any specific test results regarding the presence of toxic heavy metals. Rather, Defendants provided a spreadsheet "self-declaring" that their baby food meets unspecified criteria for toxic heavy metals.[7]

17.    Defendants' produced a spreadsheet, which declares that their baby food met the criteria for mercury, which notes with asterisks that for mercury: "[n]o specific threshold established because no high-risk ingredients are used." The Subcommittee found this note disturbing, stating "[t]his misleading framing—of meeting criteria that do not exist—raises questions about what [Defendants'] other thresholds actually are, and whether they exist."[8]

18.    The Subcommittee notes that Defendants' "evasion is concerning, as even limited independent testing has revealed the presence of toxic heavy metals in their baby food."

19.    Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults. A dose of lead that would have little effect on an adult can have a significant effect on a child. In children, low levels of exposure have been linked to damage to

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.[9]

20.   EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is a toxic metal that can be harmful to human health even at low exposure levels. Lead is persistent, and it can bioaccumulate in the body over time.[10]

21.   The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children. "In other words there are no safe limits for [lead]."[11]

## CLASS ACTION ALLEGATIONS

22.   Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following proposed Class:  All persons within the United States who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

23.   Plaintiff also seeks certification of the following subclass (the "California Subclass"): All persons in the State of California who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

24.   Excluded from the proposed Class are the Defendants, and any entities in which the Defendants have controlling interest, the Defendants' agents, employees and their legal representatives, any Judge to whom this action is assigned

---

[9] *See* https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.

[10] *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.

[11] G. Schwalfenberg, I. Rodushkinb, S.J. Genuis, "Heavy metal contamination of prenatal vitamins," Toxicology Reports 5 at 392 (2018).

and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

25.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

26.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands to tens of thousands. The number of members in the Class is presently unknown to Plaintiff but may be verified by Defendants' records. Members of the Class may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

27.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

        a.  Whether the Products contain dangerous levels of heavy metals;

        b.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

        c.  Whether Defendants' actions violate the state consumer fraud statutes invoked below;

        d.  Whether Defendants' actions constitute common law fraud;

        e.  Whether Plaintiff and Members of the Class were damaged by Defendants' conduct;

        f.  Whether Defendants were unjustly enriched at the expense of Plaintiff and Class Members; and

g. Whether Plaintiff and Class Members are entitled to injunctive relief.

**28.    Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiff are typical of the claims of other Members of the Class. All Members of the Class were comparably injured by Defendants' conduct described above, and there are no defenses available to Defendants that are unique to Plaintiff or any particular members of the Class.

**29.    Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of other Members of the Class; she has retained class counsel competent to prosecute class actions and financially able to represent the Class.

**30.    Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Class as a whole. In particular, Plaintiff seeks to certify the Class to enjoin Defendants from selling or otherwise distributing baby foods until such time that Defendants can demonstrate to the Court's satisfaction that their baby foods are accurately labeled.

**31.    Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other means of adjudication for this controversy. It would be impracticable for Members of the Class to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the Members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient

CLASS ACTION COMPLAINT

means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT 1

### FRAUDULENT MISREPRESENTATION

**(On Behalf of the Nationwide Class and, alternatively,**

**the California Subclass (collectively, the "Class"))**

32.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

33.     Defendants falsely represented to Plaintiff and the Class that the Products are natural and appropriate for consumption.  In fact, Defendants state that "Little ones deserve the very best food from the very first bite" and further state that "When making our products, we follow the same advice we give to parents: use organic, non-GMO, whole and simple ingredients whenever possible."

34.     Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Products.

35.     Defendants knew that its representations about the Products were false in that the Products contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

36.     Defendants allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

37.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the Products, Plaintiff's and the Class' reliance on Defendants' misrepresentations was justifiable.

38.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

39.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT 2

## FRAUD BY OMISSION

**(On Behalf of the Nationwide Class and, alternatively,**

**the California Subclass (collectively, the "Class"))**

40.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

41.     Defendants concealed from and failed to disclose to Plaintiff and the Class that their Products contained or were at risk of containing heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

42.     Defendants had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability, and risks of the Products because: (1) Defendants were in a superior position to know the true state of facts about its Products; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by babies; and (3) Defendants knew that Plaintiff and the Class could have reasonably been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

43.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

44.     Plaintiff and the Class justifiably relied on Defendants' omissions to their detriment.

45.     The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior in comparison to Defendants' advertisements and representations of the Products.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of elevated levels of heavy metals and toxins.

47.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## **COUNT 3**

## **NEGLIGENT MISREPRESENTATION**

### **(On Behalf of the Nationwide Class and, alternatively,**

### **the California Subclass (collectively, the "Class"))**

48.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49.     Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Products.

50.     Defendants breached their duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling Products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendants and by

1   failing to promptly remove the Products from the marketplace or to take other
2   appropriate remedial action.

3       51.   Defendants knew or should have known that the ingredients, qualities,
4   and characteristics of the Products were not as advertised or suitable for their
5   intended use (consumption by babies) and were otherwise not as warranted and
6   represented by Defendants.

7       52.   Specifically, Defendants knew or should have known that: (1) the
8   Products were not natural; (2) the Products were not nutritious, superior quality,
9   pure, natural, healthy, and safe for consumption because they contained or had a
10  risk of containing levels of heavy metals and/or other unnatural ingredients or
11  contaminants that do not conforming to the packaging; (3) the Products were
12  adulterated or at risk of being adulterated by heavy metals; and (4) the Products
13  were otherwise not as warranted and represented by Defendants.

14      53.   As a direct and proximate result of Defendants' conduct, Plaintiff and
15  the Class have suffered actual damages in that they have purchased Products that
16  are worth less than the price they paid and that they would not have purchased at all
17  had they known of the presence or risk of heavy metals or other unnatural
18  ingredients that do not conform to the Products' labels, packaging, advertising, and
19  statements.

20      54.   Plaintiff and the Class seek actual damages, injunctive and declaratory
21  relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT 4**

**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW**

**Cal. Bus. & Prof. Code §§ 17200, _et. seq._  ("UCL")**

**(On behalf of the California Subclass)**

26      55.   Plaintiff, individually and on behalf of the California Subclass, repeats
27  and re-alleges all previously alleged paragraphs, as if fully alleged herein.

28      56.   The UCL prohibits any "unlawful, unfair or fraudulent business act or

practice." Cal. Bus. & Prof. Code § 17200.

57.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

58.   Unlawful:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

      a.   The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.;

      b.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.

59.   Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

60.   Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and  the False Advertising Law.

61.   Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

62.   Fraudulent:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

63.   As set forth herein, Defendants' claims relating the ingredients stated on the Products' labeling and moreover Defendants' representations about quality, ingredient supply, and product manufacturing and oversight, as stated above, are

false likely to mislead or deceive the public.

64.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

65.    Plaintiff and Class Members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continue to disseminate misleading information on the Products' packaging. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

66.    Defendants' conduct caused and continues to cause substantial injury to California Plaintiff and Class Members.  Plaintiff and Class Members have suffered an injury in fact as a result of Defendants' unlawful conduct.

67.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

68.    Plaintiff and Class Members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts in violation of the UCL.

## COUNT 5
## VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW,
## Cal. Bus.  Prof. Code § 17500 ("FAL")
### (On behalf of the California Subclass)

69.    Plaintiff, individually and on behalf of the California Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

70.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus.

1 & Prof. Code § 17500.

2     71.    It is also unlawful under the FAL to disseminate statements concerning

3 property or services that are "untrue or misleading, and which is known, or which

4 by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

5     72.    As alleged herein, the advertisements, labeling, policies, acts, and

6 practices of Defendants relating to the Products misled consumers acting reasonably

7 as to Defendants' representations about quality, ingredient supply, and product

8 manufacturing and oversight, as stated above.

9     73.    Plaintiff and the California Subclass suffered an injury in fact as a

10 result of Defendants' actions as set forth herein because they purchased the Products

11 in reliance on Defendants' false and misleading labeling claims concerning the

12 Products, among other things, quality, ingredient supply, and product

13 manufacturing and oversight, as stated above.

14     74.    Defendants' business practices as alleged herein constitute deceptive,

15 untrue, and misleading advertising pursuant to the FAL because Defendants have

16 advertised the Products in a manner that is untrue and misleading, which Defendants

17 knew or reasonably should have known, and omitted material information from

18 their advertising.

19     75.    Defendants profited from the sale of the falsely and deceptively

20 advertised Products to unwary consumers.

21     76.    As a result, Plaintiff, California Class Members, and the general public

22 are entitled to injunctive and equitable relief, restitution, and an order for the

23 disgorgement of the funds by which Defendants were unjustly enriched.

24     77. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of

25 members of the California Subclass, seek an order enjoining Defendants from

26 continuing to engage in deceptive business practices, false advertising, and any

27 other act prohibited by law, including those set forth in this Complaint.

28

1

## COUNT 6

2

## VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,

3

## Cal. Civ. Code §1750, *et seq.* ("CLRA")

4

### (On behalf of the California Subclass)

5

    78.    Plaintiff, individually and on behalf of the California Subclass, repeats

6

and re-alleges all previously alleged paragraphs, as if fully alleged herein.

7

    79.    The CLRA prohibits deceptive practices in connection with the

8

conduct of a business that provides goods, property, or services primarily for

9

personal, family, or household purposes.

10

    80.    Defendants' false and misleading labeling and other policies, acts, and

11

practices were designed to, and did, induce the purchase and use of the Products for

12

family, or household purposes by Plaintiff and Class Members, and violated and

13

continue to violate the following sections of the CLRA:

14

          a.  § 1770(a)(5): representing that goods have characteristics, uses, or

15

              benefits which they do not have;

16

          b.  § 1770(a)(7): representing that goods are of a particular standard,

17

              quality, or grade if they are of another;

18

          c.  § 1770(a)(9): advertising goods with intent not to sell them as

19

              advertised; and

20

          d.  § 1770(a)(16): representing the subject of a transaction has been

21

              supplied in accordance with a previous representation when it has

22

              not.

23

    81.    Defendants profited from the sale of the falsely, deceptively, and

24

unlawfully advertised Products to unwary consumers.

25

    82.    Defendants' wrongful business practices constituted, and constitute, a

26

continuing course of conduct in violation of the CLRA.

27

    83.    On March 12, 2021, pursuant to the provisions of Cal. Civ. Code §

28

1782(a), Plaintiff provided a letter to Defendants with notice of their alleged

violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices. If Defendants do not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

84.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, their reasonable attorney fees and costs, and any other equitable relief that the Court deems proper.

## COUNT 7
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the California Subclass)

85.     Plaintiff, individually and on behalf of the Class Members, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

86.     Plaintiff brings this claim on behalf of herself and the California Subclass.

87.     California has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See e.g.*, Cal. Com. Code § 2315.

88.     Defendants are and were at all relevant times a merchant as defined by the relevant statutes.

89.     The Defendants' Products sold to Plaintiff and Class Members are goods as defined by the relevant statutes.

90.     Defendants sold, and Plaintiff and Class Members purchased, the Defendants' Products from authorized resellers of Defendants' products.

91.     By placing the Products into the stream of commerce, Defendants impliedly warranted to Plaintiff and Class Members of the putative class that the Products were of merchantable quality (i.e., a product of a high enough quality to

make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

92.     The Defendants' Products when sold and at all times thereafter were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendants.

93.     Defendants breached the implied warranty of merchantability because their Products suffer from the presence of toxic and/or dangerous heavy metals, such as arsenic, lead, cadmium and mercury, which have the propensity to cause health complications, rendering them unfit for their intended use and purpose as baby and/or children food and beverages. The level of heavy metals substantially impairs the use, value, and safety of these products.

94.     The toxic and/or dangerous levels of heavy metals existed when the Defendants' Products left Defendants' possession or control and were sold to Plaintiff and members of the putative class. The amounts of heavy metals contained in the Product were undiscoverable by Plaintiff and Class Member at the time of their purchase of the Product.

95.     As described herein, Defendants repeatedly advertised, both on the labels for their Products and on their respective websites, through a national advertising campaign, among other items, that the Defendants' Products were and are safe and appropriate for infant and child consumption.

96.     Contrary to these representations, the Plum Products possessed quantities, levels and the presence of toxic heavy metals which were not revealed on the Plum Baby Food Products, labels and in Defendants' uniform marketing and advertising campaigns. Rather, the Defendants' Products are unsafe because they have toxic and/or dangerous levels of heavy metals contained in their food or

beverages with the propensity to cause adverse health implications. The Products are thus unsafe and unsuitable for consumer use as marketed by Defendants.

97.   Defendants' have exclusive knowledge of material facts concerning the defective nature of the  Plum Baby Food Products,  including that they had the propensity to cause, and had caused these adverse reactions.

98.   Plaintiff and Class Members, at all relevant times, were intended third-party beneficiaries of Defendants and its agents in the distribution and sale of the Plum Baby Food Products. Moreover, Defendants exercised substantial control over which outlets can carry and sell the Plum Baby Food Products, which are the same places that Plaintiff and Class Members purchased them. In addition, Defendants' warranties are in no way designed to apply to the distributors that purchase these products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels prior to making their purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumers who purchase the Plum Brand Baby Food Products.

99.   Plaintiff and Class Members sustained damages as a direct and proximate result of Defendants' breaches in that they paid a premium for the Plum Brand Baby Food Products that they would not have otherwise paid. Plaintiff and Class Members did not receive the value of the product they paid for—the products are worthless or worth far less than Defendants represent due to the presence of toxic heavy metals contained therein which had the propensity to cause, and could lead to adverse health implications.

100.   Plaintiff and Class Members have sustained, are sustaining, and will sustain damages if Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

101.   Defendants' were placed on reasonable notice of the high levels of heavy metals contained in the Products breach of the warranties based on their

own research into food processing and sourcing, as well as a recent Congressional investigation on the matter, and have had ample opportunity to cure the inappropriate levels of metals for Plaintiff and Class Members, but have failed to do so. Instead, Defendants have doubled down on their efforts to convince consumers that their Products are safe to consume and healthy for infants and babies, including public statements denying that there are any issues with the Products.

102.   As a result of the breach of the implied warranty of merchantability, Plaintiff and Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## **COUNT 8**
## **UNJUST ENRICHMENT**
### **(On Behalf of the National Class)**

103.   Plaintiff, individually and on behalf of the National Class, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

104.   Plaintiff and the Class Members conferred a benefit on Defendants when they purchased the Products, of which Defendants had knowledge. By their wrongful acts and omissions described herein, including selling the Products, which contain heavy metals, including arsenic, mercury, cadmium, and lead at levels above what is considered safe for babies, Defendants were unjustly enriched at the expense of Plaintiff and the Class Members. Plaintiff's detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

105.   Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain the profits, benefits, and

other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

106.   Defendants have been unjustly enriched in retaining the revenues derived from the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured defective Products, and misrepresented the nature of the Products, misrepresented their ingredients, and knowingly marketed and promoted dangerous and defective Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

107.   Plaintiff and the putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the misstatements regarding what the Products were and what they contained.

108.   Defendants either knew or should have known that payments rendered by Plaintiff and the putative Class Members were given and received with the expectation that the Products were produced in accordance with the stated food philosophy, "Little ones deserve the very best food from the very first bite," as represented by Defendants. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

109.   Plaintiff and the putative Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

110.   When required, Plaintiff and the putative Class Members are in privity with Defendants because Defendants' sale of the Products was either direct or through authorized sellers. Purchasing through authorized sellers is sufficient to

create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Products.

111.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the putative Class proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

a. Declaring that this action is a proper class action, certifying the putative Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the putative Class;

b. Ordering Defendants to pay actual damages to Plaintiff and the other members of the putative Class;

c. Ordering Defendants to pay restitution to Plaintiff and the other members of the putative Class;

d. Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the putative Class;

e. Ordering Defendants to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the putative Class;

f. Ordering Defendants to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the putative Class, as allowable by law;

g. Ordering Defendants to pay both pre- and post-judgment interest, as

CLASS ACTION COMPLAINT

1  allowable by law, on any amounts awarded; and

2      h.    Ordering such other and further relief as may be just and proper.

3  **<u>DEMAND FOR JURY TRIAL</u>**

4      Plaintiff demands a trial by jury of all claims in this Complaint so triable.

5  Plaintiff also respectfully requests leave to amend this Complaint to conform to the

6  evidence, if such amendment is needed for trial.

7

8  Dated: March 12, 2021

9

10      <u>/s/ Gayle M. Blatt</u>
    GAYLE M. BLATT

11      CASEY GERRY SCHENK

12      FRANCAVILLA BLATT &
    PENFIELD, LLP

13      110 Laurel Street

14      San Diego, California 92101
    T: 619-238-1811

15      F: 619-544-9232
    gmb@cglaw.com

16

17      Gary S. Graifman

18      KANTROWITZ, GOLDHAMER
    & GRAIFMAN, P.C.

19      135 Chestnut Ridge Road
    Suite 200

20      Montvale, New Jersey 07645

21      T: 845-356-2570
    F: 845-356-4335

22      ggraifman@kgglaw.com

23

24      Melissa R. Emert
    KANTROWITZ, GOLDHAMER

25      & GRAIFMAN, P.C.

26      747 Chestnut Ridge Road
    Suite 200

27      Chestnut Ridge, New York 10977

28      T: 845-356-2570
    F: 845-356-4335

CLASS ACTION COMPLAINT

memert@kgglaw.com

*Attorneys for Plaintiffs and the
Proposed Class*

CLASS ACTION COMPLAINT